UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - )
                                         )

NEUROLOGICAL SURGERY PRACTICE OF
LONG ISLAND, PLLC,

                     Plaintiff,

            vs

EMBLEMHEALTH, INC., GROUP HEALTH
INCORPORATED, and HEALTH INSURANCE
PLAN OF GREATER NEW YORK,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**COMPLAINT**

Plaintiff, Neurological Surgery Practice of Long Island, PLLC (the "Practice"), by its attorneys, Harris Beach PLLC, for its Complaint against the Defendants, EmblemHealth, Inc. ("Emblem"), Group Health Incorporated ("GHI"), and Health Insurance Plan of Greater New York ("HIP") (collectively, "Defendants"), alleges as follows:

**PRELIMINARY STATEMENT**

1.      Defendants have violated federal law by failing to timely pay hundreds of thousands of dollars in out-of-network payment awards issued to the Practice – a neurological surgery provider –under the No Surprises Act, 42 U.S.C. § 300gg-111.

2.      Having underpaid each of the medical services claims at issue in this proceeding, Defendants forced the Practice to file Independent Dispute Resolution ("IDR") proceedings under the No Surprises Act to be fairly compensated for the critical medical services provided.

3. After losing those proceedings, Defendants had 30 days under federal law to pay the additional amounts owed. Defendants have utterly and persistently failed to do so, forcing the Practice to file this lawsuit to enforce the awards and obtain the payment it is owed for the life-saving medical services that the Practice provided to beneficiaries of Defendants' health plans.

4. The IDR process was intended to provide a fair, reasonable, and efficient mechanism for provider such as the Practice to be reimbursed for the medical necessary services they provide to health plan members. Yet Defendants are ignoring federal law and pursuing a pattern of denying, delaying, and underpaying all the way to the courthouse door.

## PARTIES, JURISDICTION, AND VENUE

5. Plaintiff, Neurological Surgery Practice of Long Island, PLLC, is a New York professional service limited liability corporation with its principal place of business located at 100 Merrick Road, Suite 128W, Rockville Centre, New York.

6. Neurological Surgery Practice of Long Island, PLLC was formed in August 2020, and, because of a merger in December 2020, is the corporate successor of Neurological Surgery, P.C.

7. Upon information and belief, Defendant Emblem is a not-for-profit corporation organized under New York law with its corporate headquarters located at 55 Water Street, New York, New York 10041.

8.     Defendant Emblem is multi-billion-dollar company and one of the largest health insurance providers in the United States.

9.     Upon information and belief, Defendant GHI is a not-for-profit corporation organized under New York law with its principal place of business located at 55 Water Street, New York, New York. GHI is a wholly owned subsidiary of Defendant Emblem.[1]

10.     Upon information and belief, Defendant HIP is a not-for-profit corporation organized under New York law with its principal place of business located at 55 Water Street, New York, New York. HIP is a wholly owned subsidiary of Defendant Emblem.

11.     This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367(c).

12.     Venue is proper in this District because the Plaintiff maintains its principal place of business in the District.

---

[1] On June 15, 2021, Emblem retired the GHI name and replaced it with EmblemHealth Plan, Inc.

## FACTS COMMON TO ALL CAUSES OF ACTION

**NSPC**

13.     Plaintiff, Neurological Surgery Practice of Long Island, PLLC (the "Practice"), is one of the largest private neurosurgery practices on Long Island and in the New York metropolitan area.

14.     The Practice's award-winning specialists are among the best neurosurgeons in New York City and on Long Island and serve as chiefs of neurosurgery in some of the most prestigious hospitals on Long Island.

15.     Historically, the Practice, like many other independent medical specialty groups, has chosen in most cases not to join health plan networks, because its relatively small size makes it impossible to negotiate acceptable rates. Accordingly, neither the Practice nor its neurosurgeons are health plan participating providers in most cases. Notwithstanding this, the Practice regularly provides medically necessary, covered services on an "out of network" and often emergency basis to beneficiaries of all health plans.

16.     Neither the Practice nor its neurosurgeons are participating providers with health plans issued, sponsored, or administered by Defendants. However, the Practice regularly provides medically necessary, covered services to the enrollees and beneficiaries of Defendants' plans. The Practice's provision of these services since January 1, 2022, in many cases has been governed by the provisions of the No Surprises Act, Public Law No. 116-260.

**The No Surprises Act**

17.     In December 2020, the United States Congress enacted the NSA, which was signed into law as part of the Consolidated Appropriations Act of 2021 (Public Law 116-260; Division BB § 109) on December 27, 2020. It took effect on January 1, 2022.

18.     NSA § 103 amends 42 U.S.C. §§ 300gg *et seq*. to establish an IDR process for non-emergency services performed by non-participating physicians at in-network hospitals, hospital outpatient departments, critical access hospitals, and ambulatory surgical centers and out-of-network emergency services in the emergency department of a hospital or independent freestanding emergency department.

19.     The NSA provides that the federal IDR process will apply and may be used by physicians and health plans to determine the out-of-network rate for emergency services in the emergency department of a hospital or independent freestanding emergency department and non-emergency items and services furnished by non-participating providers during a visit to a participating health care facility when a "specified state law" does not apply (42 U.S.C. § 300gg-111).

20.     The NSA prohibits out-of-network providers from balance billing or otherwise pursuing payments from health plan members. See 42 U.S.C. §§ 300gg-131(a) (emergency services), 300gg-132 (non-emergency services performed by nonparticipating providers at participating facilities).

21.     Given this balance billing ban imposed on out-of-network providers, the NSA requires health plans, within 30 calendar days after the out-of-network provider transmits its bill to the health plan, to either make an initial payment to the provider or issue a notice of denial of payment. *See id.* §§ 300gg-111(a)(1)(C)(iv) (emergency services), 300gg-111(b)(1)(C) (non-emergency services).

22.      When an out-of-network provider disagrees with the health plan's initial payment amount (or disagrees with the health plan's denial of any payment), the NSA provides for a 30-day open negotiation period during which the health plan and the out-of-network providers attempt to voluntarily agree on an acceptable reimbursement rate. 42 U.S.C. § 300gg-111(c)(1)(A).

23.     When this open negotiation period does not result in a voluntary agreement between the health plan and the out-of-network provider, either party has the right to commence pursue the federal IDR process, which begins with the selection of a certified IDR entity.

24.     Then, once an IDR entity is selected, the out-of-network provider and health plan "(i) shall each submit to the certified IDR entity with respect to such determination—(I) an offer for a payment amount for such item or service furnished by such provider or facility; and (II) such information as requested by the certified IDR entity relating to such offer; and (ii) may each submit to the certified IDR entity with respect to such determination any information relating to such offer submitted by either party. . . ."

25.     Overall, the IDR entity has 30 days from its selection to take into account the factors enumerated in the NSA and implementing regulations and determine either the health plan's offer

or the out-of-network provider's offer as the appropriate reimbursement rate for the service rendered. *See* 42 U.S.C. § 300gg-111(c)(5)(A).

26. When the IDR entity determines the out-of-network provider's offer as the appropriate reimbursement rate, the health plan has 30 days from the date on which the determination is made to pay the additional reimbursement due the Practice.

27. Specifically, 42 U.S.C. § 300gg-111(c)(6) provides:

> The total plan or coverage payment required pursuant to subsection (a)(1) or (b)(1), with respect to a qualified IDR item or service for which a determination is made under paragraph (5)(A) or with respect to an item or service for which a payment amount is determined under open negotiations under paragraph (1), shall be made directly to the nonparticipating provider or facility not later than 30 days after the date on which such determination is made.

28. Further, under the NSA, a health plan has only narrow grounds to challenge an IDR determination in favor of an out-of-network provider. This is because the NSA expressly provides that that a "determination of a certified IDR entity under subparagraph (A)—(I) shall be binding upon the parties involved, in the absence of a fraudulent claim or evidence of misrepresentation of facts presented to the IDR entity involved regarding such claim; and (II) shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a) of title 9, United States Code" 42 U.S.C. § 300gg-111(c)(5)(E)(i).

29. The grounds justifying judicial review set forth in 9 U.S.C. § 10(a) are:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

30.    As a District Court reviewing a challenge to an NSA IDR determination held in November 2023, these grounds to challenge an IDR determination are exceedingly narrow:

> Because these paragraphs are directly incorporated from the FAA, the "understood meaning" of their terms is incorporated as well. *See Assa'ad v. United States AG*, 332 F.3d 1321, 1329 (11th Cir. 2003) ("When Congress uses language with a well-known legal meaning, [courts] generally presume that it was aware of and intended the statute to incorporate that understood meaning."); *see also AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 508 F.3d 995, 1000 (11th Cir. 2007) (applying a plain-language analysis to the FAA).
>
> The "understood meaning" of the incorporated § 10(a) categories is extremely narrow. For example, "undue means" in 9 U.S.C. § 10(a)(1) requires "measures equal in gravity to bribery, corruption, or physical threat to an arbitrator." *Floridians for Solar Choice, Inc. v. PCI Consultants, Inc.*, 314 F. Supp. 3d 1346, 1355 (S.D. Fla. 2018) (quoting *Liberty Secs. Corp. v. Fetcho*, 114 F. Supp. 2d 1319, 1321 (S.D. Fla. 2000)), *aff'd* sub nom. *Floridians for Solar Choice, Inc. v. Paparella*, 802 F. App'x 519 (11th Cir. 2020). Likewise, even "serious interpretive error" does not rise to the level of "arbitrators exceed[ing] their powers" under § 10(a)(4). *Gherardi v. Citigroup Glob. Mkts. Inc.*, 975 F.3d 1232, 1236-37 (11th Cir. 2020). In other words, an arbitration award will fall under § 10(a) only in "very unusual circumstances." *Id.* at 1236 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995)).

> This is consistent with the prevailing view that "[j]udicial review of arbitration decisions is 'among the narrowest known to the law.'" *Id.* at 1237 (quoting *Bamberger Rosenheim, Ltd. v. OA Dev., Inc.*, 862 F.3d 1284, 1286 (11th Cir. 2017)). Arbitration, by nature, is an alternative to traditional litigation. Courts thus give both FAA and non-FAA arbitration awards limited and deferential review lest arbitration become "merely a prelude to a more cumbersome and time-consuming judicial review process." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 588, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008) (quoting *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 998 (9th Cir. 2003)); *see, e.g.*, *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987) (applying similar restraint to non-FAA awards).

*Med-Trans Corp. v. Cap. Health Plan, Inc.*, 2023 U.S. Dist. LEXIS 195736, *16-18 (M.D. Fla. Nov. 1, 2023).

**The Independent Dispute Resolution Claims at Issue**

31.     As part of its regular course of business, the Practice frequently provides medically necessary neurological surgery services to enrollees of health plans operated or administered by Defendants.

32.     The Practice, and most of its clinicians, have chosen not to become members of Defendants' participating provider networks.  Accordingly, almost of the medically necessary neurological surgery services that the Practice and its clinicians provided to enrollees of health plans operated or administered by Defendants were provided by the Practice and its clinicians on an out-of-network basis,

33.     The medically necessary neurological surgery services that the Practice and its out-of-network clinicians provided in a hospital or ambulatory surgery center to enrollees of health

plans operated or administered by Defendants on or after January 1, 2022 were subject to the provisions of the NSA. 42 U.S.C. § 300gg-111.

34. Attached to this Complaint as Exhibit A, and incorporated herein by reference, is a spreadsheet listing certain claims involving medically necessary neurological surgery services that the Practice and its out-of-network clinicians providing to enrollees  of health plans operated or administered by Defendants. These claims will be referred to in this Complaint as the IDR Claims."

35. For each of these IDR Claims, the Practice, after providing services indicated in the Claims, submitted the Claims to Defendants for reimbursement in accordance with the provisions of the NSA and the relevant health plans.

36. For each of these IDR Claims, Defendants responded by either paying nothing, or paying at a level far below the Practice's billed charges and what the Practice believed was the appropriate reimbursement rate for the medically necessary neurological surgery services provided.

37. Because the IDR Claims were subject to the NSA, the Practice was prohibited from balance billing or otherwise seeking payment from the patients for the services rendered.

38. Accordingly, the Practice's remedy was to initiate the IDR process established by the NSA.

39.     The Practice, for all the IDR Claims, initiated the NSA IDR process by advising the Defendants that it disagreed with Defendants' payment, which started a 30-day Open Negotiation Period established by the NSA.

40.     In accordance with the IDR procedures established by the Centers for Medicare and Medicaid Services ("CMS"), the Practice, for each IDR Claim, filled out the CMS-standard "No Suprises Act – Open Negotiation Form," addressed to GHI/Emblem Health, P.O. Box 2832, New York, NY 10116, Fax No. 212-510-3184.

41.     The Practice obtained this address from Defendants' representatives.

42.     The primary means that the Practice submitted the No Surprises Act – Open Negotiation Forms to Defendants was through facsimile transmissions, using the 212-510-3184 facsimile transmission number published by Defendants.

43.     When sending the No Suprises Act – Open Negotiation Forms to Defendants by facsimile transmission, the Practice received, and has retained, confirmations that the transmissions were satisfactorily received at the 212-510-3184 number.

44.     The 30-day Open Negotiations Period closed for all the IDR Claims without resolution of the parties' dispute.

45.     The Practice thereafter, for all the IDR Claims, commenced IDR proceedings within four business days from the closure of the Open Negotiation Period.

46.      In accordance with the requirements of CMS' NSA IDR process, the Practice commenced these IDR proceedings through the preparation in each case of a Notice of IDR Initiation.

47.      The Practice submitted this Notice of IDR Initiation in each case to the Federal IDR Portal at https://www.nsa-idr.cms.gov.

48.      The Notice of IDR Initiation in each case contained Defendants' contact information.

49.      For those Notices of IDR Initiation submitted regarding the IDR Claims on or before July 12, 2023, Defendants' contact information was listed by the Practice as GHI Emblem Health, P.O. Box 2832, New York, NY 10116, email nsarequest@emblemhealth.com, telephone number 877-842-3625.

50.      The Practice obtained this contact information from Defendants' representatives.

51.      For those Notices of IDR Initiation submitted regarding the IDR Claims on or before July 12, 2023, the Practice emailed copies of these Notices to Defendants using the email nsarequest@emblemhealth.com.

52.       CMS acknowledged receipt of these Notices of IDR Initiation, and the IDR Claims proceeded through the NSA IDR process.

53.     While the Practice participated in the IDR proceedings by submitting proposed offers and other information, the Defendants did not participate.

54.     Upon information and belief, CMS and the IDR entities kept Defendants apprised of the status of the IDR proceedings through notices and other information sent to Defendants using the contact information set forth in the Notices of IDR Initiation.

55.     On the dates indicated on the attached Exhibit A, the IDR entities determined, with respect to each of the IDR Claims, that the Defendants owed additional reimbursement to the Practice, in amounts indicated on Exhibit A.

56.     Upon information and belief, CMS and the IDR entities informed Defendants of these IDR determinations through notices sent to Defendants using the contact information set dates in the Notices of IDR initiation.

57.     As alleged above, under the clear and unambiguous requirements of the NSA, Defendants had 30 days from the dates of these IDR determinations to pay the Practice the required reimbursement. 42 U.S.C. § 300gg-111(c)(6).

58.     For each of the IDR Claims, Defendants have failed to pay the additional reimbursement required to be paid under the IDR determinations, even though 30 days have elapsed since the IDR determinations were issued.

**The Practice's Unsuccessful Efforts to Obtain Payment**

59.     By April 2023, the amount of $453,742 was due and owing to the Practice from the Defendants in connection with these unpaid IDR determinations regarding the IDR Claims.

60.     Accordingly, the Practice reached out to the Defendants, informed them that they were in violation of the NSA by failing to pay this additional reimbursement withing the statutorily required 30 days, and demanding immediate payment.

61.     The Practice also provided Defendants, on or about April 3, 2023, with the IDR determinations regarding the IDR Claims that were unpaid as of that date.

62.     In response, Defendants did nothing.

63.     Accordingly, on April 21, 2023, the Plaintiff commenced a lawsuit in this Court against the Defendants seeking payment of the additional reimbursement required under the IDR determinations regarding the IDR Claims.  *See Neurological Surgery Practice of Long Island, PLLC v. Emblem Health, Inc.*; et al., 23-cv-03029-OEM-SIL (E.D.N.Y.)

64.     A true and correct copy of the complaint in this lawsuit is annexed as Exhibit B and incorporated herein by reference.

65.     Defendants appeared in this lawsuit on June 1, 2023.

66.     Defendants, through their attorney, thereafter sent the Practice a letter dated July 12, 2023.

67.     A true and correct copy of this letter is annexed as Exhibit C and incorporated herein by reference.

68.     In this letter, Defendants contended to the Practice that the email address that the Practice had been using in the Notices of IDR Initiation (and had previously been supplied by Defendants) – nsarequest@emblemhealth.com – was incorrect.

69.     The July 12, 2023 letter contended that the correct email to notify Defendants about the initiation of IDR proceedings is ndr_idrsubmission@emblemhealth.com.   The letter also provides the Practice with an Internet address – https://www.emblemhealth/providers/claims-corner/no-surprises-act-faq -- to provide additional information about how to inform Defendants about IDR proceedings.

70.     Interestingly, Defendants' website is reviewed, it reveals that the actual email that Defendants' counsel contends is the "correct" email for providing Defendants with Notice of Initiation of IDR proceedings *is itself **incorrect.*** The actual email, according to the website, is nsa_idrsubmission@emblemhealth.com    not,    as    Defendants'    counsel    contends, ndr_idrsubmission@emblemhealth.com.

71.     In any event, the letter from Defendants' counsel dated July 12, 2023 unequivocally acknowledged that it received the IDR determinations for the IDR Claims requiring additional reimbursement on April 3, 2023.[2]

72.     Despite having received these determinations more than six months ago, Defendants have neither paid in accordance with the determinations, nor commenced any proceedings seeking to vacate the determinations under the only permissible grounds for vacation in accordance with 42 U.S.C. § 300gg-111(c)(5)(E)(i) and 9 U.S.C. § 10(a): (a) where the award was procured by corruption, fraud, or undue means; (b) where there was evident partiality or corruption in the arbitrators, or either of them; (c) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (d) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

---

[2] Subsequent to the receipt of this letter, based on Emblem's contention it was never properly notified about the IDR proceedings then pending, the Practice voluntarily dismissed the April 2023 lawsuit on October 31, 2023, to enable the Practice to further investigate Emblem's contents. This Complaint provides the results of this investigation. Given this investigation, and the additional unpaid IDRs that have accumulated since the commencement of the April 2023 lawsuit, we have now commenced this lawsuit.

73.    Put simply, in the time that has elapsed since these IDR determinations were made, Defendants' plans have failed to come forward with any objection regarding fraud, misconduct, partiality or corruption, or any IDR entity exceeding its powers.

74.    Similarly, after receiving the July 12, 2023 letter, the Practice updated its Notice of Initiation of IDR to include the email address ndr_idrsubmission@emblemhealth.com provided by Defendants, and ensured that it sent all Notices and other correspondence to this email address.

75.    Despite this, Defendants still have failed and refused to pay additional reimbursement required to be paid by IDR determinations issued on the IDR Claims after July 12, 2023.

76.    All totaled, since July 12, 2023, 13 IDR determinations were issued on the IDR Claims that awarded the Practice a total of $976,404.  All these determinations have remained unpaid for more than 30 days.

**Defendants' Misrepresentations**

77.    In addition to failing and refusing to pay IDR determinations awarding additional reimbursement within the NSA-required 30 days, Defendants have persistently over the last six months made false and misleading statements to IDR entities regarding eligibility.

78.    Specifically, there have been various cases over the last six months when Defendants have acknowledged the existence of a dispute between the parties regarding proper reimbursement.

79.     When the Practice in these cases has attempted to commence IDR proceedings for in connection with these disputes, the Defendants have falsely represented to the IDR entities that the disputes were ineligible for NSA IDR because their health plans were not subject to the provisions of the NSA.

80.     The IDR entities relied on these representations to declare these disputes ineligible for IDR proceedings.

81.     As a result, the Practice lost its opportunity to be reimbursed at the correct rate for the medically necessary services that it provided.

**The Practice's Irreparable Harm**

82.     The persistent refusal by Defendants' plans to honor their statutory obligations under the NSA has caused the Practice substantial and grievous injury.

83.     Since the NSA became effective, Defendants' plans have unilaterally and dramatically reduced their initial out-of-network reimbursement rates to the Practice, drastically impairing the Practice's financial status and viability.

84.     Accordingly, the failure of Defendants' plans to pay significant amounts of additional reimbursement adjudicated to be due the Practice is a significant and urgent issue.

**FIRST CAUSE OF ACTION**

85.     Plaintiff repeats and re-alleges the allegations set forth above as if more fully set forth herein.

86.     Regarding the IDR determinations listed on Exhibit A, by reason of all the foregoing, the Practice fully complied with the requirements of the NSA, and obtained additional reimbursement that Defendants were obligated under 42 U.S.C. § 300gg-111(c) to pay within 30 days of issuance.

87.     Defendants have failed and refused to pay this additional reimbursement within the required 30 days as they were obligated to do under the NSA.

88.     Defendants have failed and refused to raise any of the limited statutory objections to the validity of IDR determinations as established by the NSA.

89.     By reason of all the foregoing, the Practice is entitled to have the IDR determinations confirmed, converted into a federal judgment, and the assistance of this Court in post-judgment collection efforts.

90.     The Practice is further entitled to pre-judgment interest from the 31st day after each award was entered until the date judgment is entered and post-judgment interest thereafter until the judgment is satisfied.

## SECOND CAUSE OF ACTION

91.    Plaintiff repeats and re-alleges the allegations set forth above as if more fully set forth herein.

92.    The Practice has been assigned the right to payment and benefits from the beneficiaries of Defendants' plans. Accordingly, the Practice steps into the shoes of, and are now considered, ERISA beneficiaries pursuant to 29 U.S.C. § 1002(8) for the self-funded plans that Defendants are administering.

93.    As an assigned beneficiary, the Practice is entitled to plan benefits and has standing to bring claims under ERISA. Defendants are responsible for No Surprises Act compliance for the plans they administer. The Practice is entitled to recover payment of benefits of the plans from Defendants per the IDR determinations.

94.    Defendants improperly denied benefits by failing to pay the IDR awards within thirty (30) days of each decision as required by federal law. Defendants' actions were in derogation of the Practice's rights pursuant to law.

95.    Defendants' actions also constituted an abuse of discretion by: (a) not properly interpreting plan terms that are not ambiguous; (b) exercising discretion over non-discretionary plan terms; and (c) denying Plaintiffs payment and benefits under the plan terms.

96.    Defendants' denial of payment and benefits upon the finality of IDR determinations were not substantially justified decisions, were arbitrary and capricious, were unsupported by

substantial evidence, constituted abuse of any discretion allowed, and were wrongful under all the circumstances.

97.   By reason of all the foregoing, the Practice, as assignee, hereby asserts a claim under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1332(a)(1)(B) to recover payment of the IDR awards from the self-funded plans administered by Defendants at issue herein.

98.   Pursuant to 29 U.S.C. § 1132(g), the Practice further seek an award of reasonable attorney's fees and costs incurred in bringing this action.

## THIRD CAUSE OF ACTION

99.   Plaintiff repeats and re-alleges the allegations set forth above as if more fully set forth herein.

100.   New York Insurance Law § 3224-a (the "Prompt Pay Law) provides that in the processing of all health care claims and bills from health care providers, any insurer or organization or corporation licensed or certified pursuant to Insurance Law article 43 or Public Health Law article 44 shall pay the bill or claim of a medical provider within 45 days of receipt.

101.   Each of the Defendants meets the definition of an insurer or organization or corporation licensed or certified pursuant to Insurance Law article 43 or Public Health Law article 44.

102. Defendants, as alleged above, have unjustifiably failed and refused to pay the Practice the additional reimbursement regarding the IDR Claims, as reflected by Exhibit A, notwithstanding more than 45 days have elapsed since the IDR determinations awarding this additional reimbursement were issued.

103. Defendants' actions constitute a violation of the Prompt Pay Law.

104. By reason of the foregoing, the Practice has been damaged in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**

105. Plaintiff repeats and re-alleges the allegations set forth above as if more fully set forth herein.

106. From January 1, 2023 to date, representatives of Defendants have made statements of material fact to NSA IDR entities that the Defendants' health plans that were involved in reimbursement disputes with the Practice were not subject to the provisions of the NSA and therefore ineligible for NSA IDR.

107. These statements of material fact were false when made; these health plans were, in fact, subject to the provisions of the NSA.

108. At the time that Defendants' representatives made these false statements, Defendants knew that the statements were false.

109. At the time that Defendants' representatives made these false statements, Defendants made these statements recklessly without regard to whether they were true or false.

110. Defendants' representatives made these false statements to convince the IDR entities at issue to rely on these statements, and thereby declare the pending reimbursement dispute ineligible for NSA IDR.

111. The IDR entities did, in fact, rely on the statements made by Defendants' representatives to declare the pending reimbursement disputes ineligible for NSA IDR.

112. The IDR entities' reliance  on the statements made by Defendants' representatives to declare the pending reimbursement disputes ineligible for NSA IDR was justifiable.

113. The Practice sustained damages because of the IDR entities' reliance on Defendants' false statements.

114. By reason of the foregoing, the Practice has been damaged in an amount to be determined at trial.

## **FIFTH CAUSE OF ACTION**

115. Plaintiff repeats and re-alleges the allegations set forth above as if more fully set forth herein.

116. By reason of the foregoing, Defendants' actions in failing to timely pay the additional reimbursement it was required to pay the Practice pursuant to the provisions of the NSA

and the Prompt Pay Law has violated the express provisions of both the NSA and the Prompt Pay Law.

117.    By reason of the foregoing, Defendants' actions in making false statements of material fact to NSA IDR entities that the Defendants' health plans that were involved in reimbursement disputes with the Practice were not subject to the provisions of the NSA and therefore ineligible for NSA IDR are illegal.

118.    Defendants' actions in failing to timely pay the additional reimbursement it was required to pay the Practice pursuant to the provisions of the NSA and the Prompt Pay Law has irreparably harmed the Practice.

119.    Defendants' actions in making false statements of material fact to NSA IDR entities that the Defendants' health plans that were involved in reimbursement disputes with the Practice were not subject to the provisions of the NSA and therefore ineligible for NSA IDR has irreparably harmed the Practice.

120.    The Practice has no adequate remedy at law to redress Defendants' illegal and improper actions.

121.    By reason of all the foregoing, the balance of equities are in favor of the Practice, and against the Defendants.

122.    By reason of all the foregoing, the Practice is entitled to a permanent injunction (a) compelling Defendants to pay additional reimbursement awarded to the Practice in NSA IDR

determinations within 30 days of the issuance of those determinations; (b) compelling Defendants to take all steps necessary to ensure that additional reimbursement awarded to the Practice in NSA IDRA determinations is paid within 30 days of the issuance of those determinations; and (c) enjoining the Defendants from falsely informing NSA IDR entities that their health plans are not subject to the NSA.

WHEREFORE, the Plaintiff, Neurological Surgery Practice of Long Island, PLLC, demands that this Court enter judgment against the Defendants, EmblemHealth, Inc., Group Health Incorporated, and Health Insurance Plan of Greater New York as follows:

(a) on the first cause of action, enforce the IDR determinations and issue judgment for the total amount outstanding plus pre- and post- judgment interest per 28 U.S.C. § 1961;

(b) on the second cause of action, award and pay to Plaintiff the additional benefits to which it is entitled by virtue of the IDR determinations, along with Plaintiff's costs of suit herein and reasonable attorney's fees pursuant to ERISA Section 502(g)(1), 29 U.S.C. § 1132(g);

(c) on the third cause of action, award Plaintiff damages in an amount to be determined at trial, together with all interest required to be paid pursuant to the provisions of the Prompt Pay Law;

(d) on the fourth cause of action, award Plaintiff damages in an amount to be determined at trial;

(e) on the fifth cause of action, issue a permanent injunction (i) compelling Defendants to pay additional reimbursement awarded to Plaintiff in NSA IDR determinations within 30 days of the issuance of those determinations; (ii) compelling Defendants to take all steps necessary to ensure that additional reimbursement awarded to Plaintiff in NSA IDRA determinations is paid within 30 days of the issuance of those determinations; and (iii) enjoining the Defendants from falsely informing NSA IDR entities that their health plans are not subject to the NSA; and

(f) award Plaintiff its attorney's fees, costs, pre- and post-judgment interest, and all additional legal or equitable relief to which Plaintiff may be entitled and this Court deems just and proper.

Dated: Uniondale, New York
December 14, 2023

HARRIS BEACH PLLC

By: _____

Roy W. Breitenbach
The Omni
333 Earle Ovington Blvd, Suite 901
Uniondale, New York 11553
Phone: 516.880.8484
Fax:    516.880.8483

*Attorneys for Plaintiff Neurological Surgery*
*Practice of Long Island, PLLC*

CounselOfRecord